UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 2:24-CR-00082-01** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **NORVELL HARRIS (01)** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

### REPORT AND RECOMMENDATION

Before the Court is Defendant's Motion to Suppress (Rec. Doc. 34). The Government opposed the motion (Rec. Doc. 38), and Defendant replied (Rec. Doc. 40). The Court held an evidentiary hearing on October 7, 2024. (Rec. Doc. 53). The motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that Defendant's Motion to Suppress be denied.

### Facts and Procedural History

Following complaint, Defendant was indicted on April 17, 2024, with three counts of possession with intent to distribute heroin, fentanyl, and cocaine and one count of possession of a firearm in furtherance of a drug trafficking crime. (Rec. Doc. 5). He appeared and was arraigned on May 6, 2024. (Rec. Doc. 16). Defendant

filed the instant motion to suppress evidence seized from a storage unit rented by his girlfriend.

The evidence shows that on September 18, 2023, a confidential informant informed Det. Schlesinger of the Calcasieu Parish Sheriff's Office that Defendant, Norvell Harris, lived with his girlfriend, Swanda Collins, in Lake Charles and that Harris possessed and stored a large amount of marijuana at a storage facility near their shared home. (Rec. Doc. 53, p. 24-28). The next day, detectives obtained a search warrant to obtain information pertaining to any unit rented to Collins and Harris. (Rec. Doc. 47-6). The owner of the facility, Greg Lohr, provided information which revealed that Collins had rented unit AA15, with Harris identified as a contact. (Rec. Doc. 53, p. 36-38; Rec. Doc. 47-7). Also pursuant to search warrants (Rec. Doc. 47-8; 47-9), detectives reviewed video surveillance at the facility, which showed Harris accessing the facility. (Rec. Doc. 53, p. 38-44; Rec. Doc. 47-3, p. 4). Pursuant to another search warrant, detectives also placed a tracking device on Harris's vehicle which revealed him accessing the facility. (Rec. Doc. 53, p. 42-44).

On September 26, 2023, detectives surveilled Harris visiting the storage unit and, without a warrant, called in a drug sniffing dog, Timon, handled by Sgt. Booth. (Rec. Doc. 47-3, p. 4). The hallway accessing unit AA15 was locked and accessible only by code, key card, or with the owner/manager, Greg Lohr. (Rec. Doc. 53, p. 45-46; 86; 88). Mr. Lohr granted officers access into the locked hallway to conduct the

dog sniff. (Rec. Doc. 53, p. 45-49; 72). Mr. Lohr and officers testified that the smell of marijuana was evident in the hallway. (Rec. Doc. 53, p. 74; 110; 143-44). Timon displayed an odor response at unit AA15. (Rec. Doc. 53, p. 54-55). Based on Timon's odor response, investigators obtained a search warrant for unit AA15, the search of which revealed drugs. (Rec. Doc. 53, p. 55-56; 64; Rec. Doc. 47-3; 47-13; 47-14; 47-15).

Harris moves to suppress the drugs discovered in unit AA15 pursuant to the warrant. He challenges the officers' right to conduct a dog sniff in the locked hallway and maintains officers violated his reasonable expectation of privacy therein. The Government contends that Harris did not have a reasonable expectation of privacy in the hallway, and that, regardless, valid consent justified the officers' presence.

## **Law and Analysis**

Defendant's Motion to Suppress invokes the exclusionary rule, as it seeks to preclude the Government from introducing at trial certain evidence, specifically the drugs and gun uncovered in the search of the storage unit. "The exclusionary rule was created by the Supreme Court to 'supplement the bare text' of the Fourth Amendment, which 'protects the right to be free from 'unreasonable searches and seizures,' but ... is silent about how this right is to be enforced.'" *United States v. Ganzer*, 922 F.3d 579, 584 (5th Cir.), *cert. denied,* 140 S. Ct. 276 (2019), citing *Davis v. United States*, 564 U.S. 229, 231 (2011). The exclusionary rule operates to

3

exclude the prosecution from introducing evidence obtained unconstitutionally. *Id.* Its purpose is to deter officer misconduct, not to redress injury to the victim of a constitutional violation or to address judicial errors or misconduct. *Id.*, citing *Davis v. United States*, 564 U.S. 229, 236-37 (2011), and *United States v. Leon*, 468 U.S. 897, 916 (1984). Thus, the Supreme Court recognized a good faith exception to the exclusionary rule, which allows admission at trial of "evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate" but later invalidated. *Id.* citing *Leon*.

Generally, "the defendant has the burden of proving, by a preponderance of the evidence, that the material in question was seized in violation of his constitutional rights." *United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993). In cases where the officer acted without a warrant, the Government bears the burden of proof. *Id; United States v. Castro*, 166 F.3d 728, 733, fn. 6 (5th Cir. 1999). Harris challenges the search of the storage facility hallway, the results of which investigators used to obtain a search warrant for the individual unit, AA15; however, the Government contends that the dog sniff of the hallway did not constitute a search. Because the defendant must first demonstrate a violation of the Fourth Amendment, before the burden shifts to the government (*United States v. Ellis*, 330 F.3d 677, 679 (5th Cir. 2003)), Harris bears the initial burden. If he proves the dog sniff was a search, the burden shifts to the Government to show the search was valid.

4

### A. <u>Whether the dog sniff was a search.</u>

A threshold question into whether a Fourth Amendment violation has occurred is whether the officers' conduct constituted a search. The Government contends that no search occurred because the dog sniff did not occur in Harris's home or its curtilage. Harris attempts to equate the storage facility hallway to protected curtilage entitled to Fourth Amendment protection.

"A canine 'sniff' test is not a 'search' for Fourth Amendment purposes and is exempt from the probable cause requirement so long as the dog does not enter the home or vehicle." *United States v. Powell*, 732 F.3d 361, 373 (5th Cir. 2013). See also *United States v. Beene*, 818 F.3d 157, 162 (5th Cir. 2016) ("A sniff may nevertheless be an unwarranted search when it involves an intrusion into a constitutionally protected area, such as the home or its curtilage.") The Supreme Court has long recognized the sanctity of one's home and its curtilage:

> [T]he Fourth Amendment protects the curtilage of a house and that the extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself. We identified the central component of this inquiry as whether the area harbors the "intimate activity associated with the 'sanctity of a man's home and the privacies of life.'"
>
> Drawing upon the Court's own cases and the cumulative experience of the lower courts that have grappled with the task of defining the extent of a home's curtilage, we believe that curtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the

5

nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

*United States v. Dunn*, 480 U.S. 294, 300-301, 107 S. Ct. 1134, 1139 (1987).

"When one rents a storage unit, no curtilage comes with it." *United States v. McKenzie*, 13 F.4th 223, 232 (2d Cir. 2021). Unit AA15 easily falls beyond the boundaries of the home and its curtilage. The unit was located in a facility which leased similar units to multiple renters. The lease terms prohibited living, sleeping, and otherwise using the unit as a residence. (Rec. Doc. 47-1, p. 4). Harris argues that the lease agreement provided that homeowners' insurance could be used to cover items stored in the units (Rec. Doc. 53, p. 92-95; Rec. Doc. 47-1; 47-18); however, the mere possibility that homeowners' coverage may be used is insufficient to establish the sanctity protected by the Supreme Court. Indeed, Harris did not contend or produce evidence that he had, in fact, protected the unit with homeowners' insurance.[1]

Even though a storage unit is not as sacred as one's home, a viable expectation of privacy may nevertheless support a Fourth Amendment violation.

---

[1] The rental agreement indicates that Collins had, by "checking the box," contacted her insurance agent, confirmed coverage for her property at the facility, and attached a copy of the insurance declarations page as proof of coverage; however, the form for identifying an insurance company is blank and no proof of coverage is attached. (Rec. Doc. 47-1, p. 2-3).

6

Constitutionally protected areas are those in which an individual enjoys a reasonable expectation of privacy:

> A Fourth Amendment privacy interest is infringed when the government physically intrudes on a constitutionally protected area or when the government violates a person's reasonable expectation of privacy. To assess whether a reasonable expectation of privacy exists, the Supreme Court has applied Justice Harlan's two-fold approach as explained in his concurrence in *Katz v. United States*. Specifically, for Fourth Amendment protections to attach to a person's privacy interest, the person first must have exhibited an actual (subjective) expectation of privacy. Second, that expectation must be one that society is prepared to recognize as reasonable.

*United States v. Smith*, 110 F.4th 817, 830–31 (5th Cir. 2024) (cleaned up).

Although Harris argues he enjoyed a reasonable expectation privacy in unit AA15, the salient issue is whether Harris had a reasonable expectation of privacy in the locked hallway accessing Collins's and other units.

"When testing common, or public, areas—those areas to which the public and others, such as law enforcement officers, have access—courts generally hold that a party possesses no reasonable expectation of privacy and that the Fourth Amendment is thus not implicated." *United States v. Ramirez*, 145 F. App'x 915, 923 (5th Cir. 2005), citing cases. Harris argues that the fact that the hallway outside unit AA15 was locked and accessible only by code or keycard distinguishes it from other common areas. He relies principally on *United States v. Whitaker*, 820 F.3d 849 (7th Cir. 2016), in which the Seventh Circuit suppressed evidence seized after a drug dog alerted to the presence of drugs at the door of the defendant's apartment.

Similar to the instant case, the apartment property manager had authorized a canine sniff of the complex. *Id*. at 851. *Whitaker* does not help Harris, because an apartment is one's home and its door is obviously curtilage, shielded from intrusion by a "'super-sensitive instrument' to detect objects and activities that [officers] could not perceive without its help." *Id*., citing Justice Kagan's concurrence in *Fla. v. Jardines*, 569 U.S. 1, 12, 133 S. Ct. 1409, 1418 (2013). As discussed above, a storage unit is not one's home or its curtilage, and its common access hallway is not curtilage.

The Government relies upon *United States v. McKenzie*, 13 F.4th 223 (2d Cir. 2021), a more factually analogous case in which the Second Circuit denied the defendant's motion to suppress evidence seized from a storage unit enclosed by a fence and security gate. The record was not clear in that case how the officers gained access to the area, though the court reasonably inferred that the property manager had granted access. *Id*. at 228, n.2; 233. Distinguishing from curtilage cases, the court found that the defendant did not possess a reasonable expectation of privacy in the area outside his storage unit. *Id.* at 232. The defendant offered no evidence that the officers were trespassing or that he had any authority to exclude people from the facility. *Id*. at 233. The court held:

> Commercial storage units are closer to luggage in an airport, or an automobile detained during a traffic stop, than a dwelling. They do not present the privacy interests associated with the "intimate details" of one's life which are inherently associated with the home. We agree … that dog sniffs outside of storage units do not violate the renter's reasonable expectation of privacy.

*Id*. at 235 (citations omitted).

The same conclusion results here. The facility hallway was a common area accessible to other unit renters, the landlord, Mr. Lohr, any individuals with a key card or passcode, and anyone else on the premises with Mr. Lohr's permission, including cleaners, maintenance workers, and prospective renters. (Rec. Doc. 53, p. 113-14; 119-20; 124). As such, Harris did not have a reasonable expectation of privacy in the hallway, despite the fact that the hallway was secured. See *Ramirez*, 145 F. App'x at 923, citing cases for the position that a tenant lacks a reasonable expectation of privacy in areas exposed to those with access and those with permission to be in the area. See also *United States v. Cook*, 904 F.2d 37 (6th Cir. 1990) ("We hold that a person's expectation of privacy does not extend to the areaway outside a rented storage locker in a public facility."); *United States v. Taylor*, 979 F. Supp. 2d 865, 880-811 (S.D. Ind. 2013), *aff'd,* 776 F.3d 513 (7th Cir. 2015) ("Here, the dog sniff occurred outside Hoosier Storage Unit # 1134 after an employee gave law enforcement permission to be there…[and], the only privacy interest that Mr. Taylor had by renting unit 1134 at Hoosier Storage was inside that particular storage space.")

Absent a reasonable expectation of privacy in the hallway accessing unit AA15, Harris cannot prove the dog sniff was a search. Of course, a drug canine's alert to the presence of drugs constitutes probable cause to search. *United States v.*

*Sanchez–Pena*, 336 F.3d 431, 444 (5th Cir. 2003). Timon's positive drug alert, together with other facts attested in the affidavit for the search warrant of AA15, support a finding of probable cause supporting the search warrant. Harris's motion to suppress should be denied on these grounds alone.

### B. Whether valid consent vitiated the need for a warrant.

Although the Court finds that the dog sniff did not constitute a search, and thus required no warrant, the Court will briefly address the Government's alternative argument that consent justified the officers' presence in the hallway. Valid consent to search is an exception to the Fourth Amendment's probable cause and search warrant requirements. *United States v. Perales*, 886 F.3d 542, 545–46 (5th Cir. 2018). Voluntary consent may be obtained "either from the individual whose property is searched or from a third party who possesses common authority over the premises[.]" *Illinois v. Rodriguez,* 497 U.S. 177, 181, 110 S. Ct. 2793, 2797 (1990). "'Common authority' rests 'on mutual use of the property by persons generally having joint access or control for most purposes[.]'" *Id.* quoting *United States v. Matlock,* 415 U.S. 164,171, n. 7, 94 S.Ct. 988, (1974).

"Where two individuals are co-tenants or co-occupants, they assume the risk that the co-user may consent to a search." *United States v. Freeman*, 482 F.3d 829, 834, fn. 12 (5th Cir. 2007), citing *United States v. Richard,* 994 F.2d 244, 250 (5th Cir.1993) *abrogated on other grounds.* "Unless the complaining co-tenant has

10

somehow limited the other's access to a piece of property, the consenting co-tenant's authority extends to all items on the premises." *Id.* See also *United States v. Rizk,* 842 F.2d 111, 112 (5th Cir.1988).

Harris, like all other storage unit renters, is akin to a co-tenant with Mr. Lohr vis-à-vis the access hallway. Mr. Lohr testified that he owned the property and was authorized to grant access as he deemed fit, including to law enforcement officers, prospective renters, and for cleaning and maintenance. (Rec. Doc. 53, p. 113-14; 119-20; 124). Harris presented no evidence that he had any right to limit third-party access to the hallway or that Mr. Lohr lacked legal capacity to grant access to investigating officers and drug dog. Thus, even if Timon's sniff was considered a search for purposes of this alternative argument, the officers were lawfully present with Mr. Lohr's consent.

## Conclusion

For the reasons discussed herein, the Court recommends that Defendant's Motion to Suppress (Rec. Doc. 34) be denied.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after

11

being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 4th day of November, 2024.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE