UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 2:24-cr-00082 |
| | * | |
| VERSUS | * | JUDGE CAIN |
| | * | |
| NORVELL HARRIS (01) | * | MAGISTRATE JUDGE WHITEHURST |

RESPONSE TO MOTION TO REVEAL THE IDENTITY
AND CRIMINAL HISTORY OF INFORMANT, DISCLOSE
ANY DEALS, PROMISES, OR INDUCEMENTS, AND TO
PROVIDE A COPY OF ANY AND ALL VIDEO AND AUDIO
RECORDINGS OF TRANSACTIONS BETWEEN DEFENDANT
AND INFORMANT, WITH INCORPORATED MEMORANDUM

NOW into Court, comes the United States, through the undersigned Assistant United States Attorney for the Western District of Louisiana, who states in response to the above entitled motion (Doc. 69), the following:

**I.    PROCEDURAL HISTORY**

On April 17, 2024, the defendant, NORVELL HARRIS, was indicted by a Grand Jury for the Western District of Louisiana for possession with intent to distribute heroin, possession with intent to distribute fentanyl, and possession with intent to distribute cocaine, each count being in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B), as well as possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c). (Rec. Doc. 4). On May 6, 2024, a pretrial discovery order was filed by the Court. (Rec. Doc. 22). On July 15, 2024, Derrick Kee moved to enroll to represent

1

the defendant (Rec. Doc. 26), and on September 10, 2024, Roy Wygant moved to enroll as co-counsel to represent the defendant. (Rec. Doc. 32).

On the same day, a motion to suppress was filed by the defense. (Rec. Doc. 34). A hearing on the motion to suppress was held on October 7, 2024. (Rec. Doc. 45). On November 4, 2024, a report and recommendation was signed by the Magistrate Judge, recommending denial of the motion. (Rec. Doc. 56). The defendant objected to the report and recommendation, the United States responded, and on December 9, 2024, the report and recommendation of the Magistrate Judge was adopted by the District Court, and the motion was denied. (Rec. Doc. 65).

The matter was initially set for jury trial to take place on December 9, 2024. (Rec. Doc. 25). In the midst of the motion to suppress, the suppression hearing, the report and recommendation, and the defendant's objection to that report, on October 22, 2024, the defendant moved to continue the December trial date. (Rec. Doc. 51).

As this Court will recall, during the October 7, 2024, suppression hearing, defense counsel questioned several law enforcement agents including the case agent, as well as a narcotics-detecting canine handler. Despite the examination of law enforcement officers regarding their investigation in this case, including a tip received by an informant, only recently, on April 4, 2025, about five weeks before the second trial fixing in this case, the defendant filed the instant motion, among five total motions. The United States has and continues to strenuously oppose any additional continuances of the trial set in this matter.

## II. RELEVANT FACTS

Though the facts of the case have been thoroughly addressed during the motion to suppress hearing, the undersigned will address the confidential informant's participation in the pending criminal case.

In September of 2023, law enforcement received a tip from a reliable confidential informant that the defendant and his girlfriend, Swanda Collins, lived at 4469 Lake Fairway Drive, Lake Charles and that Harris utilized a storage facility to store a large amount of marijuana. He also stated that he had seen Harris in possession of a large amount of cocaine, fentanyl and promethazine. Law enforcement officers were aware of both the defendant and Swanda Collins because they had stopped them in 2022 in possession of 8 ounces of promethazine.[1]

As a result of that tip, law enforcement opened an investigation. They determined that there were two storage facilities in the area. They obtained a search warrant for the U-Haul Storage facility located at 211 Sharon Lane in Lake Charles in order to determine if either Harris or Collins rented any unit from the facility. From that search warrant they obtained information that Swanda Collins rented a storage room at that location and that "Vell" Harris was an alternate contact for the storage unit. Law enforcement obtained video surveillance from the storage facility (the facility had on-scene cameras that recorded the entrance and exit of the facility

---

[1] In a separate motion (Rec. Doc. 72), the defendant claimed that the 2022 traffic stop of Harris and Collins never took place and that no criminal charges were ever sought against Harris. As demonstrated in the United States' response to that motion (Rec. Doc. 76), those assertions were either ill-informed or outright false statements by the defendant, as the United States was able to confirm that traffic encounter and resulting charges with ease.

3

that could be accessed based upon the use of a swipe card assigned to the renter of the storage unit). The video surveillance showed Harris, on numerous occasions, bringing items into and out of the facility.

A drug dog was brought to the facility and upon arriving at the entrance of the room rented by Swanda Collins, and accessed by Harris, the dog displayed an odor response to the area of the storage unit. The law enforcement officers could also smell the strong odor of marijuana near to the storage unit rented by Swanda Collins. As a result, a search warrant was obtained for the unit. Suitcases that appeared to be the same as those the defendant brought into the facility were found in the unit containing marijuana, fentanyl, heroin, cocaine, and a loaded firearm.

### III. LAW AND ARGUMENT

#### A. Evidence the United States Intends to Introduce Regarding the Informant

The defense previously filed a motion to suppress. He did not request the identity of the confidential informant prior to that hearing. Instead, he argues that he is entitled to the confidential informant's identity for use during the trial. The defense argues that he is entitled to the identity of the confidential information and all information related to him as described more fully in the caption of their motion. He claims entitlement based upon the inaccurate allegation that the confidential informant is a witness to the criminal conduct for which the defendant has been charged.

The defendant is charged with possession with intent to distribute heroin, fentanyl, cocaine, and a firearm on the date of the search of the storage unit. The

statements about the prior possession of illegal drugs made by the confidential informant and the prior use of the storage facility by the defendant, will not be admitted. They will not be evidence presented against the defendant at the trial of the defendant.

The United States intends to introduce testimony from law enforcement that as a result of information given by a confidential informant, they began an investigation of possible storage of drugs at the U-Haul Storage facility at 211 Sharon Lane. That investigation included obtaining a search warrant to determine if Swanda Collins and/or the defendant were renting a storage unit at the U-Haul Storage facility at 211 Sharon Lane. There will be no other mention of the confidential informant mentioned in the trial of the defendant. None of his/her statements will be introduced at trial. The confidential informant will not testify at trial for the obvious reason that he/she did not witness any of the charged crimes, as detailed below.

### B. Applicable Law

The United States Supreme Court has recognized that the government enjoys a privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Rovario v. United States*, 353 U.S. 53, 59 (1957). This precedent is intended to serve the public's interest in effective law enforcement by protecting the anonymity of citizens who carry out their obligation to communicate knowledge of criminal activity to law enforcement officials, and the anonymity encourages those communications. *United States v. Sanchez*, 988 F.2d 1384, 1391 (5th Cir. 1993). Courts have thus

repeatedly held that in certain circumstances, in the context of criminal discovery, the government may withhold a confidential informant's identity from a defendant.[2]

The privilege is not absolute, and a defendant can compel such a disclosure if he establishes that it would be "relevant and helpful," to his defense. *Miller v. United States*, 273 F.2d 279, 280 (5th Cir. 1960). To carry that burden, a defendant must offer more than "mere speculation about the usefulness of an informant's testimony." *United States v. Scafe*, 822 F.2d 928, 933 (10th Cir. 1987).

In short, public policy forbids disclosure of the identity of an informer except where it is essential to the defense. *Scher v. United States*, 305 U.S. 251, 254 (1938). Based on *Rovario*, The Fifth Circuit has established a three-prong test to determine when disclosure of an informant is required. *United States v. Toro*, 840 F.2d 1221, 1232 (5th Cir. 1988). First, the court should consider whether the informant participated in the criminal activity. *Id.* Second, the court is to consider the helpfulness of the disclosure to the asserted defense. *Id.* The defendant *must* establish that the informant's testimony would significantly aid him in asserting his defense. *Id* (emphasis added). Third, the court should consider the government's interest in non-disclosure. *Id.*

---

[2] See generally, *United States v. Fields*, 113 F3d. 313, 324 (2d Cir. 1997); *United States v. Bender*, 5 F.3d 267, 269 (7th Cir. 1993); *United States v. Mendoza-Salgado*, 964 F.2d 993, 1000 (10th Cir. 1992); *United States v. Harrington*, 951 F.2d 876, 877 (8th Cir. 1991); *United States v. Martinez*, 922 F.2d 914, 920 (1st Cir. 1991); *United States v. Williams*, 898 F.2d 1400, 1402 (9th Cir. 1990); *United States v. Smith*, 780 F.2d 1102, 1107 (4th Cir. 1985); *United States v. Sharp*, 778 F.2d 1182, 1185 (6th Cir. 1985); *United States v. Tenorio-Angel*, 756 F.2d 1505, 1509 (11th Cir. 1985); *United States v. Green*, 670 F.2d 1148, 1154 (D.C. Cir. 1981); *United States v. Jiles*, 658 F.2d 194, 196 (3d Cir. 1981); and *United States v. Diaz*, 655 F.2d 580, 586 (5th Cir. 1981).

### C. The First Factor

The first factor, the informant's involvement in the crime, weighs heavily in favor of nondisclosure. The informant had no involvement in the charged offenses. He/she did not perform controlled buys or controlled deliveries of the narcotics or firearms recovered. While the *Roviaro* factors are not amenable to blanket rules, the Fifth Circuit has observed that " 'several broad categories can be discerned in the published decisions.' " *United States v. Diaz*, 655 F.2d 580, 587 (5th Cir. 1981) (quoting *United States v. Fischer*, 531 F.2d 783, 787 (5th Cir. 1976)). "At one extreme are those cases where the informant was a mere tipster." *Id*. According to the Fifth Circuit, "[i]t is settled that the *Roviaro* principle does not require disclosure and production of such an informant." *Id*. Other Fifth Circuit cases have reached the same conclusion. *See, e.g., Bourbois v. United States*, 530 F.2d 3, 3 (5th Cir. 1976) ("The government is not required to disclose the identity of an informant who is a mere tipster and not an active participant in the offense charged."); *United States v. Clark*, 482 F.2d 103, 104 (5th Cir. 1973) ("We have held that where the evidence shows that an informer is nothing more than an informer and does not participate in the transaction, no disclosure of his identity is required.").

In this case, the informant is akin to those that nondisclosure is intended to protect. That is, the informant served as a tipster, providing information about what he/she observed.  Law enforcement took that tip and then engaged in real investigative police work.  They worked, based on a tip, to confirm or dispel whether

7

Harris, who was on supervised release at the time, was engaged in drug trafficking, which he was.

In Paragraph 6 of the motion, the defendant claims that "it is clear," that the informant's report is the single "most important event" that occurred leading up to the defendant's arrest. (Rec. Doc. 69, p. 3). This characterization of the case is far afield from the truth. It ignores the entirety of the investigation, which included video evidence of Harris wheeling multiple bags of narcotics into a storage facility and the seizure of distribution amounts of narcotics contained in those same bags and a firearm from the only storage unit in that facility contracted to Swanda Collins (with documented access granted to Harris). The confidential informant was not an eyewitness to any of those facts. Again, it is obvious to one who carefully looks at this case, but the confidential informant in this case is not a trial witness precisely because he/she did not witness any of the charged conduct.

In Paragraph 11 of the motion, the defendant claims that the informant is the only eyewitness to the defendant's alleged drug trafficking activity, that all other aspects of the case are based on circumstantial evidence, and that the defendant has never been shown handling the drugs he was charged with. (Rec. Doc. 69, p. 5). Of course, each of those claims is false, since the informant was not a witness to the charged conduct at all. Further, the defendant is on video, wheeling multiple bags of narcotics into a storage facility. Later, after a drug-sniffing dog alerted outside the storage unit contracted to Collins (with documented access granted to Harris), narcotics were found in the same identifiable bags that Harris brought there. The informant was not a witness to any of those actions. As the Court is aware, this

8

seizure was done pursuant to a search warrant obtained based upon the dog's alert – not based upon an informant stating that Harris put drugs in that unit. The canine led officers to the specific unit rented by Collins and accessed by Harris. Officers were aware of Harris' access to that facility as a result of their investigation, which included search warrants to ascertain whether Harris had any dealings with that facility.

In Paragraph 10 of his motion, the defendant cites Supreme Court precedent to contend that the identity of an informer must be disclosed, "in cases in which the informant actively participated and/or was a percipient witness to the underlying act or transaction which serves as a basis for prosecution." (Rec. Doc. 69, pp. 4-5).[3] Quite simply, in this case, the informant did not actively participate in nor was he/she an eyewitness to any of the charged offenses.

In a case directly on point, in *United States v. Ortega*, 854 F.3d 818, 824–25 (5th Cir. 2017), the defense moved for the disclosure of the identity of confidential informants whose information led to obtaining a search warrant and indictment against the defendant. The Court found that, though the defendant might have previously sold crack to the confidential informant, he was not a witness or active participant in the charged offense; the possession of drugs and guns at the time the search warrant was executed. As the Court found, the informant did not participate

---

[3] For this last effort for relief, the defendant cites *Rovario v. United States*, 353 U.S. 53 (1957). Interestingly, that is not a citation to any specific holding, language, or headnote. Rather, it is only a citation to the case generally. Without more, the Government would simply point out that *Rovario* involved facts in which a defendant was charged specifically with selling heroin to one "John Doe," in violation of the Narcotic Drugs Import and Export Act. *Rovario*, at 55. Obviously, those facts are wildly different than those presented in this case. At the risk of redundancy, the informant in this case did not witness the charged conduct in this case.

in the search of the defendant's residence, so he was not a witness to the crime for which he was charged. *Id*.

The defense argues that he has a Sixth Amendment Right to confront the witnesses against him, including, in this case, the confidential informant. The defendant goes so far as to call the informant, the "accuser." (Rec. Doc. 69, p. 2). The Sixth Amendment Right to confrontation is a trial right. It does not require the government to produce witnesses whose statements *are not used at trial*. *Pennsylvania v. Ritchie,* 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987). The right to confrontation is a *trial* right. *Id.* at 53–54 nn. 9–10, 107 S.Ct. at 999–1000 nn. 9–10 (asserting that "the Confrontation Clause only protects a defendant's trial rights.... 'It does not ... require the government to produce witnesses whose statements are not used at trial....' ") Again, in this case, the informant merely provided a tip that prompted law enforcement to begin an investigation that led to the seizure of significant quantities of narcotics and a firearm. The defendant has not carried the burden of establishing that this first factor weights toward disclosure.

### D. The Second Factor

The second factor, the helpfulness of the disclosure to an asserted defense, also weighs heavily in favor of nondisclosure. In *United States v. Worthington*, 544 F.2d 1275, 1281 (5th Cir. 1977) the court noted that, "the inquiry centers on the likelihood that the informant possesses facts which are relevant and helpful to the accused in preparing his *defense on the merits*." (emphasis added); *See also, United States v. De Los Santos*, 810 F.2d 1326, 1331 (5th Cir. 1987) ("The defendant is required to make

10

a sufficient showing that the testimony would significantly aid the defendant in establishing an asserted defense."); *United States v. Orozco*, 982 F.2d 152, 155 (5th Cir. 1993) ("Mere conjecture or supposition about the possible relevancy of the [CI's] testimony is insufficient to warrant disclosure."). At any trial in this case, the primary evidence of the defendant's charges would come from the results of the search warrants and his interview with law enforcement.

> In Paragraph 7 of his motion, the defendant states:
>
> However, Mr. Harris was never found with narcotics on his person or in his vehicles, and the only place in which narcotics was found was is Swanda Collins' storage unit or in Swanda Collins' home, indicating that, if the informant had truly seen large amounts of narcotics, it would have been in the course of active participation in a large drug transaction in a private location. This shows that the informant was an active participant in the activity that Mr. Harris is now charged with. (Rec. Doc. 69, pp. 3-4).

Those two sentences are quintessentially conjecture or supposition. The defendant does not give any indication as to how the informant's identity would assist the defense in refuting the narcotics and firearm that were found in a storage unit searched pursuant to a warrant. The defendant does not give any indication as to how the informant's identity would assist in addressing the defendant's post-arrest statements whereby he acknowledged possession of those seized items. Rather, because the informant did not participate in or witness any of the charged offenses, the defendant's need for that identity is strained. The evidence that will be presented at trial will be the direct result of law enforcement investigation, results from search warrants, and the defendant's own inculpatory statements.

11

In upholding the District Court's decision to deny the disclosure of the confidential informant, *Ortega* also addressed whether the defense had met its burden that the information requested would be helpful to the defense. *United States v. Ortega*, 854 F.3d 818 (5th Cir. 2017). In *Ortega*, the defense argued that the confidential informant was the only person who could contradict law enforcement's allegations supporting probable cause. In upholding the ruling of the District Court, the Court ruled that the defense allegation that the witnesses were essential to his defense was no more than unsubstantiated speculation, and as a result that factor weighed against disclosing the confidential informant. *Id* at 825.

### E. The Third Factor

Finally, because the defendant fails under the first two *Roviaro* factors, the Court should deny the defendant's motion. *United States v. Davis*, 443 F. App'x 9, 14 (5th Cir. 2011) ("Because the first two factors do not establish a case for disclosure, we need not consider the third factor."); *United States v. Cooper*, 949 F.2d 737, 750 (5th Cir. 1991). ("Inasmuch as Cooper failed to provide evidence supporting the first two prongs of this circuit's test, we need not consider the strength of the government's interest in preserving the confidentiality of the informant's identity."). Nonetheless, the third factor, the government's interest in nondisclosure, also weighs in the government's favor. As previously stated, the government has a well-acknowledged and strong interest in protecting information pertaining to informants. *See Roviaro* 353 U.S. at 59. In nearly every informer case, the government has a substantial interest in preserving the free flow of information to the police. *Id* at 62. Disclosure in this case could thwart that interest by discouraging potential informants from

Case 2:24-cr-00082-JDC-CBW   Document 80   Filed 04/11/25   Page 13 of 13 PageID #: 797

coming forward. *See generally In re Kleberg County, Texas*, 86 F. App'x 29, 32 (5th Cir. 2004) ("Following the conference, the Sheriff's Department began to contact confidential informants to apprise them of the district court's orders. According to the County, none of the informants were willing to appear for fear that their identities would be revealed.").

### IV.     CONCLUSION

Based upon the foregoing response, the defense has failed to carry his burden justifying the disclosure of the confidential informant. The United States prays that this Honorable Court deny the motion to disclose information concerning and the identity of confidential informant.

On April 4, 2025, the defense filed five motions including the one to which this opposition addresses. The defense previously filed a motion to continue trial on October 22, 2024. At the request of the defense, the trial of this defendant is scheduled for May 12, 2025. The United States opposes any additional continuance of this matter.

Respectfully submitted,

ALEXANDER C. VAN HOOK
Acting United States Attorney


*s/ John Luke Walker*
JOHN LUKE WALKER, LA Bar No. 18077
LAUREN L. GARDNER, La Bar No. 30595
Assistant United States Attorneys
800 Lafayette Street, Suite 2200
Lafayette, LA 70501-6832
Telephone: 337.262.6618

13