**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

**UNITED STATES OF AMERICA**          **CASE NO.  2:24-CR-00082-01**

**VERSUS**                            **JUDGE JAMES D. CAIN, JR.**

**NORVELL HARRIS (01)**               **MAGISTRATE JUDGE CAROL B. WHITEHURST**

<u>**MEMORANDUM ORDER**</u>

Before the Court is a "Motion to Exclude Expert Witness" (Doc. 70), wherein Defendant, Norvell Harris, moves to exclude the testimony of DEA special agent, Chad Berard.

<u>**BACKGROUND**</u>

Defendant, Harris was indicted on three counts of possession with intent to distribute heroin, fentanyl, and cocaine, and one count of possession of a firearm in furtherance of a drug trafficking crime.[1] The evidence shows that the Calcasieu Parish Sheriff's Office ("CPSO") was informed by a Confidential Informant ("CI") that Harris lived with his girlfriend, Swanda Collins at 4469 Lake Fairway Drive in Lake Charles, and that Harris possessed and stored a large amount of marijuana at a storage unit (unit AA15) near the couple's home.[2]

The CPSO obtained a search warrant pertaining to any unit rented to Collins and Harris.[3]  The owner of the storage unit provided information that Collins had rented unit

---

[1] Doc. 16.
[2] Doc. 53, pp. 24-28.
[3] Doc. 47-6.

AA15 and Harris was identified as a contact.[4] Pursuant to search warrants,[5] detectives reviewed video surveillance at the facility which showed Harris repeatedly accessing the facility.[6] Pursuant to another search warrant, detectives placed a tracking device on Harris's vehicle, which revealed him accessing the facility.[7]

Sometime thereafter, Detective surveilled Harris visiting the storage unit and called in a drug sniffing canine.[8] The canine responded positively to an odor, which prompted a search warrant for unit AA15. Officer conducted a search of unit AA15 and discovered marijuana, heroin, fentanyl, cocaine, and a pistol. The pistol was discovered in a backpack, which also contained a large number of methamphetamine pills.[9] After discovering these drugs, the Officer obtained another search warrant for 4469 Fairway Drive, Lake Charles, Louisiana.  There officers discovered two pounds of marijuana, several doses of MDMA, THC edibles, US currency, and several boxes of ammunition.

Harris has not been charged with possession of the marijuana, MDMA, THC edibles and the ammunition found at the house, and the ammunition found at the house did not match the pistol found in the storage unit. Harris has been charged with possession to distribute heroin [21 U.S.C. § § 841(a)(1) & (b)(1)(B)], fentanyl [21 U.S.C. § § 841(a)(1) & (b)(1)(A)], and cocaine [21 U.S.C. § § 841(a)(1) & (b)(1)(B)], and possession of a firearm in furtherance of a drug trafficking crime [18 U.S.C. § 924(c)].

---

[4] Doc. 53, p. 36-38, Doc. 47-7.
[5] Doc. 47-8 and 47-9.
[6] Doc. 53, pp. 38-44; Doc. 47-3, p.4.
[7] Doc. 53, pp. 42-44.
[8] Doc. 47-3, p. 4.
[9] Government's attachments, 2, 3, and 4.

## LAW AND ANALYSIS

Defendant anticipates that the Government will call DEA Special Agent Chad Berard as an expert to testify that the pistol found in storage unit AA15 was used to further drug trafficking.  Defendant argues that Berard's testimony and/or certain opinions should be excluded because it is not helpful to the jury, it is not reliable, and is based on erroneous legal conclusions that will mislead the jury as to the necessary elements of the crime.

The Government remarks that it intends to call Special Agent Berard to testify as a drug trafficking expert and further notes that it gave notice on October 25, 2024, of the expert testimony, as well as Special Agent Berard's qualifications as an expert in drug trafficking along with a summary of his expert testimony. The Government maintains that Berard is qualified to testify regarding all areas of drug trafficking and notes that Berard has been qualified in federal court to testify as an expert in drug trafficking, including the use of firearms by drug traffickers.

Berard has been with the Drug Enforcement Administration ("DEA") for twenty-six years. During his tenure with the DEA, Berard has been involved in hundreds of investigations of drug traffickers and drug trafficking organizations. He has conducted hundreds of interviews and thousands of hours of surveillance, listened to more than one hundred hours of phone calls related to investigations of drug traffickers, and has served as the case agent in over one hundred large scale drug trafficking investigations.

As a law enforcement agent, Beard has interviewed and recruited informants, obtained information about the means of distribution, the amounts and methods of drug distribution, and drug trafficking trends. He has participated in the execution of over one

hundred search warrants of residences, stash houses, and other locations where illegal narcotics were found and seized, as well as tools used by distributors, manufacturers and users, such as scales, and drug ledgers.

Berard has also received training as a DEA Special Agent, attended sixteen (16) weeks of training at the DEA Academy, attended training on complex drug conspiracies, and receives weekly updates on drug trafficking trends ranging from money laundering methods to hidden compartments.

In reaching his opinions, Berard reviewed the CPSO's reports of investigation, the Homeland Security Investigations report, the Crime Lab reports, search warrants and photographs form the execution of search warrants on storage locker AA15 and the home on Lake Fairway Drive.

The Government remarks that surveillance videos show Defendant repeatedly entering and exiting the storage unit facility at various time of the day or night and that he was observed bringing suitcases and a small blue bag into the facility on one occasion.

A drug canine was brought to the facility and alerted officers for drugs at Defendant's storage locker. Law enforcement and the manager of the facility could smell a strong odor of marijuana outside the storage unit. A search warrant was obtained and executed. Evidence discovered in the storage locker included: 1) the suitcases and blue bag that Defendant could be seen bringing into the facility on the surveillance cameras; 2) a significant amount of marijuana, bags of heroin, fentanyl and cocaine; and 3) a pistol.

The pistol was found in a small purple backpack. In the backpack, along with the pistol, numerous pills were found that tested positive for methamphetamine.[10]

As noted hereinabove, law enforcement also found a large amount of cash as well as other drugs and numerous rounds of ammunition in the home located on Lake Fairway Drive, along with Defendant's credit cards, driver's license, Department of Health card, Golden Nugget 24K Select card, and other documents in Defendant's name.

Federal Rule of Evidence 702 sets forth the rule for admissibility of expert opinion testimony and provides that an expert may only be allowed to give opinion testimony if (1) the expert is qualified, (2) the opinion is based on sufficient facts, (3) the opinion is based on reliable principles and methods, (4) and those methods are reliably applied to the facts of the case. Federal Rule of Evidence 702. Opinion evidence is not admissible if it will not help the trier of fact understand the evidence. *Id.* In short, the rule expands on *Daubert*'s holding that expert testimony must be both "reliable" and "relevant." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 2799, 125 L. Ed. 2d 469 (1993).

The expert's opinion must also be based on sufficient facts, and not just mere speculation or subjective belief. *McGill v. BP Expl. & Prod., Inc.*, 830 F. App'x 430, 432–33 (5th Cir. 2020) (excluding expert pulmonologist's opinion when based on studies that were consistent with, but did not conclusively support, his opinion, which showed a "notable analytical gap" between his supporting studies and his opinion).

---

[10]    (See Attachment 2, 3, and 4, photographs from interior of storage unit.)

The Fifth Circuit has ruled that an experienced narcotics agent may testify about the significance of certain conduct or methods of operation unique to a drug distribution business. *United States v. Buchanan*, 70 F.3d 818, 832–33 (5th Cir. 1995), as amended (Feb. 22, 1996). The testimony can include how drug dealers bundle money and possess certain amounts of drugs and firearms and other items helpful to drug trafficking. The testimony of the expert, in addition, can include the street value of drugs seized. *United States v. James*, 291 F. App'x 676, 679 (5th Cir. 2008).

Experts may testify to the ultimate issue provided that the testimony does not address the defendant's state of mind or opine as to the legal implications of the conduct. *United States v. Graham*, 123 F.4th 1197, 1262 (11th Cir. 2024). Expert testimony related to drug trafficking organizations, recruitment of couriers and efforts to avoid detection are admissible provided that they do not embrace the defendant's state of mind. *United States v. Lozano*, 711 F. App'x 934, 939–40 (11th Cir. 2017).

The Government acknowledges that Berard's testimony "that possession of the firearm was in furtherance of the drug activity" is a legal conclusion about the guilt of the Defendant, and assures the Court that Berard's testimony will not violate that rule.[11] Specifically, Defendant complains of Berard's following opinion:

> 3. It is my opinion that the firearms that are possessed by drug traffickers are used for the protection of the drug trafficker and to prevent the robbery or theft of the drugs that are in the proximity of. [sic]

---

[11] Government's opposition, p. 4.

Here, it appears that Defendant complains Berard's opinion is a legal conclusion, which the Government concedes is improper, and further explains that it intends to stay within the limitation of the law. The Government contends that Berard's opinion as to firearms possessed by drug traffickers to protect and prevent robbery is based on the nature of the evidence and the proximity of the firearm to where the narcotics are located. The Court finds that this opinion is only Berard's opinion based on his experience as a Special DEA Agent, and is not a legal conclusion about the guilt of the Defendant or a misapplication of the law. The jury will have the last say as to Defendant's guilt after the Court has properly instructed the jury as to the applicable law.

Defendant also complains of Berard's following opinion:

4. It is my opinion that based upon the firearm's location and proximity to the narcotics, the firearm was more consistent with other narcotics investigations where the firearm was used to protect and further the drug trafficking than scenarios that possession of a firearm is undertaken by an individual for a legitimate and lawful purpose.

Again, Berard is not drawing a legal conclusion as to Defendant's guilt, nor is he opining that every firearm found in proximity of narcotics equates to using a firearm in furtherance of drug trafficking. Here, it appears that Berard is stating that due to the firearm's location and proximity to the narcotics, based on other narcotics investigations, it is more likely that the firearm's purpose was to protect and further the drug trafficking, instead of it serving a purpose that was legitimate and lawful. This is not a legal conclusion. The Court will provide the jury with the applicable law and any proposed limiting

instructions, which will allow the jury to decide if Defendant is guilty of the indicted charges against him.

Finally, Defendant complains that Berard's opinion number 5 is not the product of reliable methods. Berard opined as follows:

> 5. It is my opinion that the amount and packaging of the drugs found both in the storage facility as well as the residence are consistent with drug trafficking and inconsistent this [sic] the personal use of those drugs.[12]

The Court finds that Defendant has failed to show that Berard's methods are unreliable, and as stated above, Berard is not testifying as to Defendant's guilt, but is comparing facts of this case to other similar situations he has been involved with over his 26-year career investigating drug trafficking. See *United States v. James*, 291 F. App'x 676, 679 (5th Cir. 2008); *United States v. Washington*, 44 F.3d 1271, 1283 (5th Cir. 1995). The Court finds no basis for excluding this opinion, but will allow the jury to decide whether or not Defendant is guilty of the charges against him.

<u>**CONCLUSION**</u>

For the reasons explained herein,

**IT IS ORDERED** that Defendant's Motion to Exclude Expert Witness" (Doc. 70) is **DENIED**.

**THUS DONE AND SIGNED** in Chambers on this 21st day of April, 2025.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[12] Defendant's exhibit, Berard report, p. 3, Doc. 79-1.